IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**SENTRY SELECT INSURANCE COMPANY**                                                                       **PLAINTIFF**

**V.**                                                                                                   **NO. 1:22-CV-14-DMB-DAS**

**MICHAEL COCKRELL and
JOHN DOES A–D**                                                                              **DEFENDANTS**

## ORDER

Michael Cockrell seeks to set aside the entry of default and default judgment obtained against him by Sentry Select Insurance Company. For the reasons discussed below, the default judgment will stand.

**I
Background and Procedural History**

**A. Insurance Claim**

On June 30, 2015, Michael Cockrell entered a contract with Amory Marine Sales, Inc., to build a roof "constructed of steel and covered with sheets of metal" for a commercial structure owned by Amory Marine. Doc. #4-2 at PageID 20; Doc. #16-1 at 2. On February 18, 2021, Amory Marine reported a claim to its insurance carrier, Sentry Select Insurance Company, regarding damage to the roof constructed by Michael.[1] Doc. #52-3.

Julie Kaufmann, a Sentry claims representative, sent Michael (1) a letter dated March 15, 2021, notifying him that Sentry would be sending an engineer to inspect the alleged roof damage and recommending he notify his insurance carrier, *id.* at PageID 252; (2) a letter dated April 16, 2021, attempting to set up a joint inspection of the damage to the roof by his insurance carrier or

---

[1] The first names of persons with the same surname will be used to avoid confusion.

him, and Sentry's engineer, advising him that Sentry would seek reimbursement after payment of its "first party adjustment," and again recommending he notify his insurance carrier, Doc. #52-4 at PageID 254; and (3) after the inspection, a June 2, 2021, e-mail again advising him that Sentry would seek reimbursement following its payment of "the first party claim," Doc. #52-5. The first letter was sent to 50301 Athens Quincy Road, Aberdeen, Mississippi. Doc. #52-3. The second letter was sent to 50122 Burr Road, Aberdeen, Mississippi. Doc. #52-4. Michael did not respond to Kaufmann's letters or e-mail.

## B. Default Judgment

On January 12, 2022, Sentry, "as the subrogor of Amory Marine," filed a complaint against Michael in the United States District Court for the Northern District of Mississippi alleging Michael's negligence in the design and/or construction of Amory Marine's roof and seeking "all sums expended by [it] in the reimbursement for the cost of the repair or replacement of the collapsed roof of Amory Marine's structure." Doc. #1 at 3, 4.

Two days later, Sentry sent by restricted delivery certified mail to Michael at the Athens Quincy Road address a request for waiver of service with the waiver and complaint. Doc. #8 at PageID 35. On January 24, 2022, Sentry received a certified mail receipt indicating that the January 14 request for waiver package was received by "Brooke Cockrell." Doc. #8-1 at PageID 37; Doc. #8 at PageID 35.

On January 26, 2022, the day after it amended its complaint,[2] Sentry sent by restricted delivery certified mail to Michael at the Athens Quincy Road address a second request for waiver of service with the waiver and amended complaint. Doc. #8 at PageID 35. On February 4, 2022,

---

[2] Because the complaint did not properly allege Sentry's citizenship, the Court permitted Sentry to file an amended complaint if jurisdiction could be established. Doc. #3. Sentry filed an amended complaint on January 25, 2022, that established jurisdiction. Doc. #4.

2

Sentry received a certified mail receipt indicating that the January 26 request for waiver package was received by "B.C." Doc. #8-2 at PageID 41, 42; Doc. #8 at PageID 35.

When Michael did not return either request for waiver of service, Sentry sent a summons and the amended complaint to Mid South Attorney Services, LLC, a process serving company. Doc. #10-1 at PageID 54; Doc. #12 at PageID 58. After three unsuccessful attempts to serve Michael at the Athens Quincy Road address,[3] Sentry obtained an extension of time to serve process. Doc. #11. On April 18, 2022, Sentry filed an affidavit of service by Perry Gann, a Mid South process server, indicating that Perry personally served Michael on April 6, 2022, at the Athens Quincy Road address.[4] Doc. #12.

On May 10, 2022, the Clerk of Court, on Sentry's motion, entered a default against Michael, Doc. #15, and mailed a copy of the entry of default to Michael at the Athens Quincy Road address. Approximately one month later, on June 15, 2022, Sentry moved for a default judgment. Doc. #16. The Court granted Sentry's request for a default judgment but denied without prejudice its request for "all costs of court."[5] Doc. #18 at 8. A copy of the order was mailed to Michael at the Athens Quincy Road address. The Court entered a final judgment of $188,700.65 plus post-judgment interest against Michael on December 20, 2022. Doc. #21.

On February 24, 2023, Sentry filed a notice setting Michael's judgment debtor examination for March 20, 2023, attaching a certificate of service representing that a copy was mailed to

---

[3] The unsuccessful attempts to serve Michael were made on March 17, 2022, at 6:20 p.m.; March 19, 2022, at 4:30 p.m.; and March 23, 2022, at 7:17 p.m. Doc. #10-1 at PageID 54.

[4] Perry's affidavit of service identifies Michael as the recipient and the Athens Quincy Road address as Michael's address. In the space designated for manner of service, the affidavit states "Personal/Individual, Apr 6, 2022, 9:50 pm CDT." The "Additional Comments" section lists the previous unsuccessful attempts to serve Michael before stating "Successful Attempt: Apr 6, 2022, 9:50 pm CDT at 50301 Athens Quincy Rd, Aberdeen, MS 39730 received by Michael Cockrell. **Served MICHAEL COCKRELL**." Doc. #12 (emphasis in original).

[5] The Court denied without prejudice "all costs of court" because Sentry "provided no details or evidence to establish an award of such costs." Doc. #18 at 7.

Michael at the Athens Quincy Road address. Doc. #22 at 1, 4. When Michael failed to appear for the debtor examination, Sentry moved to compel his appearance and for sanctions. Doc. #24. On May 23, 2023, United States Magistrate Judge David A. Sanders, granting Sentry's motion in part, ordered Michael to "show cause by June 9, 2023, why [the] court should not order him to pay [Sentry]'s attorney's fees in the amount of $5,538.33." Doc. #25 at PageID 147. A copy of Judge Sanders' order was mailed to Michael at the Athens Quincy Road address. Michael did not respond to the show cause order.

On May 30, 2023, Sentry filed an amended notice resetting the debtor examination for June 28, 2023, attaching a certificate of service representing that a copy was mailed to Michael at the Athens Quincy Road address and at the Burr Road address. Doc. #26 at 1, 4.

On June 13, 2023, an attorney entered an appearance as counsel of record for Michael. Doc. #27. The next day, Michael moved to stay post-judgment proceedings based on his representation that he "intends on filing a Motion pursuant to Fed. R. Civ. P. 60(b) to set aside the Final Judgment." Doc. #28 at PageID 154. On June 15, 2023, Judge Sanders entered an agreed order staying post-judgment proceedings, Doc. #29; as well as a sanctions order requiring Michael to "reimburse [Sentry] in the amount of $5,538.33 for the reasonable costs it incurred in filing the motion to compel," Doc. #30 at PageID 160.

On June 19, 2023, Michael moved for reconsideration of Judge Sanders' order granting sanctions. Doc. #33. The same day, Michael filed a motion to set aside the entry of default and the default judgment, Doc. #31, arguing such is warranted under Federal Rules of Civil Procedure 60(b)(4) and 60(b)(1), Doc. #32 at 5–8. Michael attached to his motion four affidavits, one each from himself, Karen Cockrell, Marleigh Cockrell, and Brooke Cockrell. Docs. #31-1, #31-2, #31-3, #31-4. In his affidavit, Michael swears that his address is 50122 Burr Road and that 50301

4

Athens Quincy Road is his mother Karen's address; in February 2022, Karen received by mail a summons, complaint, and request for waiver addressed to him, which she brought to him; he and Brooke consulted Diane Worthy Nelson, who was representing them in a custody matter, and Nelson advised them to do nothing until he was personally served or received notice of a court date; on April 6, 2022, Karen came to his home with a second summons and complaint she received from a process server; he and Brooke contacted Nelson again and Nelson advised him to do nothing until he was personally served or received notice of a court date; he was not at Karen's address on April 6, 2022; and the first time he was personally served in this case was on June 6, 2023, when he was served with post-judgment documents at the Burr Road address. Doc. #31-1 at PageID 164–65. The statements in the affidavits of Karen, Marleigh, and Brooke are nearly identical to those in Michael's affidavit. Doc. #31-2 at PageID 167–68; Doc. #31-3 at PageID 169; Doc. #31-4 at PageID 171–72.

In response to Michael's motion, Sentry submitted a second affidavit from Perry in which Perry describes his unsuccessful attempts to serve Michael and reiterates that he personally served Michael on April 6, 2022, as indicated in his affidavit of service. Doc. #38-1 at 1–2.

On October 26, 2023, Judge Sanders denied the motion for reconsideration without prejudice, reasoning that any ruling on it "[b]y necessity … depends wholly on the … resolution of his motion to set aside entry of default and default judgment." Doc. #45. By then, briefing on Michael's motion to set aside had been completed. Docs. #32, #39, #44.

### C. Hearing Evidence

On January 31, 2024, this Court, pursuant to notice, held an evidentiary hearing on Michael's motion to set aside the entry of default and default judgment. Doc. #49. Michael called

as witnesses himself, Brooke Cockrell, Marleigh Cockrell, Karen Cockrell, and Faye Gann. Doc. #50. Sentry called as a witness only Perry Gann. *Id.*

At the hearing, Michael testified that he was not served on April 6, 2022, at the Athens Quincy Road address; though he previously lived at the Athens Quincy Road address, he moved to the Burr Road address in December 2018; his mother Karen moved into the house at Athens Quincy Road in March 2019; on April 6, Karen contacted him stating a woman had served her with documents for him at the Athens Quincy Road address (on direct examination, Michael testified his mother called him but on cross examination, he testified she sent him a text message); Karen brought the documents to his house at Burr Road that night; and he and Brooke then consulted Nelson, their custody attorney, and Nelson advised him to do nothing until he was personally served or received a court date. According to Michael's testimony, prior to April 6, he received phone calls from Kaufmann requesting his insurance information, though he did not recall receiving letters or an e-mail; after scheduling a time to meet with Sentry's engineer to inspect the damage to Amory Marine's roof, he sent his brother and a colleague named Jessie Barnett to the meeting because he was unavailable; Brooke received letters in the mail about the lawsuit; and when Brooke contacted Nelson about the letters she received, Nelson advised them to do nothing until he received a court date to appear.

Michael's wife Brooke—who is responsible for his construction business' telephone correspondence, paperwork, and invoices—testified that on April 6, 2022, she and Michael lived at the Burr Road address; Michael was not personally served on April 6; and Karen called or texted Michael the night of April 6 to ask if they were at home before coming to the Burr Road address with documents a woman had given her. According to Brooke's testimony, she and Michael contacted Nelson about the lawsuit twice—once when Karen gave them letters about the lawsuit

6

she received in the mail and again when Karen gave them documents she was served on April 6; and both times, Nelson advised Michael to do nothing until he was personally served and received a court date. Brooke denied receiving packages from Sentry that the certified mail receipts show were received by "Brooke Cockrell" and "B.C."

Michael's 18-year-old daughter Marleigh testified that on April 6, 2022, Michael had not been to Karen's house at Athens Quincy Road; and Karen came to her house on Burr Road that night with documents she received regarding the lawsuit against Michael. On cross examination, Marleigh testified that she was certain Karen came to her house the night of April 6 because there are cameras at the Burr Road address; however, when asked whether there is camera footage showing such, Marleigh paused and then responded that she wasn't aware of any footage.[6] Marleigh ultimately testified that the footage was not necessary because she remembered the date Karen came to her house with the documents.

Michael's mother Karen testified that she lives at 50301 Athens Quincy Road; on April 6, 2022, a woman served her with documents at the Athens Quincy Road address; immediately afterwards, she called Michael to inform him that someone had delivered documents for him and that she was on her way to his house; and she brought the documents to Michael at the Burr Road address that night.

Faye, one of the two process servers, testified that she and her husband Perry serve process together for Mid South Attorney Services; on April 6, 2022, she drove Perry to the Athens Quincy Road address and remained in the car while he delivered the documents to an individual;[7] and the

---

[6] During the pause, Marleigh seemed to look at Michael and Brooke for her response. At the time, Brooke was seated in the gallery following her testimony and being finally excused as a hearing witness.

[7] Faye testified that from her position in the car she could not see whether the person Perry served was a man or a woman.

first time she encountered any member of the Cockrell family was when she served Michael with post-judgment documents on June 6, 2023. Faye denied that she served Karen with the summons and complaint on April 6.

Perry, the other process server, testified that he began serving process for the Mississippi Department of Human Services and for Mid South Attorney Services after concluding his career in law enforcement; he has served process hundreds of times; and on April 6, 2022, he and his wife Faye drove to the Athens Quincy Road address, he knocked on the door, a man answered the door and identified himself as Michael, and he gave the documents to Michael and left.

At the conclusion of the evidentiary hearing, the Court took the motion under advisement.

## II
## Discussion

In his motion, Michael asks the Court to set aside the entry of default and default judgment on grounds that he "has submitted compelling evidence establishing that he was not personally served" or, alternatively, because his "failure to answer was the product of mistake or excusable neglect." Doc. #31 at PageID 161–62. His memorandum brief specifies Rules 60(b)(4) and 60(b)(1) as the bases for the relief he seeks.[8] Doc. #32 at 5, 6.

### A.  Rule 60(b)(4)

Michael argues the default judgment should be set aside pursuant to Federal Rule of Civil Procedure 60(b)(4) because he was not personally served with process. Doc. #32 at 5–6. Sentry responds that Michael was personally served and even if he was not personally served, he had actual notice of the lawsuit. Doc. #39 at 4. Michael replies that actual notice is insufficient to cure defective service. Doc. #44 at 2–4.

---

[8] Though Michael's motion seeks to set aside both the entry of default and the default judgment, his memorandum brief mentions only the default judgment. *See generally* Doc. #32.

8

"Federal Rule of Civil Procedure 60(b)(4) allows a court to relieve a party from a final judgment if the judgment is void." *Scott v. Carpanzano*, 556 F. App'x 228, 291 (5th Cir. 2014). "It applies only when a judgment is premised on a 'jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.'" *Id.* (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)). "If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside." *Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d 298, 306 (5th Cir. 2014) (citation omitted). "When service of process is challenged, the serving party bears the burden of establishing its validity. The general rule is that a signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (cleaned up).

Under Federal Rule of Civil Procedure 4(e), an individual within a judicial district in the United States may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1)–(2).

9

Sentry filed an affidavit of service in which Perry swore he personally served Michael with the summons, complaint, and amended complaint on April 6, 2022, at 50301 Athens Quincy Road. Doc. #12 at PageID 58. Thus, there is prima facie evidence of valid service under Rule 4(e)(2)(A), which can be refuted only by Michael providing "strong and convincing evidence." *Hartmann*, 447 F. App'x at 524.

In the attempt to refute Sentry's prima facie evidence of valid service, Michael attached to his motion the affidavits from himself, Karen, Marleigh, and Brooke. Docs. #31-1, #31-2, #31-3, #31-4. Notably, they all testified at the hearing that a woman[9] served Karen at the Athens Quincy Road address on April 6, 2022, (though Faye denied serving Karen on that date) and that Karen brought the documents she received to Michael's house on Burr Road that night. In contrast, Sentry attached to its response Perry's affidavit reiterating that Michael was personally served as indicated in Perry's affidavit of service. Doc. #38-1 at 2. And at the evidentiary hearing, Sentry presented Perry's testimony that on April 6, 2022, he (not Faye) served a person who identified himself as Michael.

"[C]ontested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *United States v. Blake*, No. 19-51187, 2021 WL 2763300, at *2 (5th Cir. Mar. 24, 2021). When presented with witness testimony, courts determine witness credibility by "weigh[ing] factors such as inconsistencies, intentional omissions, and … demeanor of the witnesses." *United States v. Whitaker*, No. 15-00171, 2017 WL 2378360, at *2 (M.D. La. June 1, 2017); *see United States v. Adams*, 275 F. App'x 298, 300

---

[9] When presented with a picture of Faye, Doc. #52-2, on direct examination, Karen identified Faye as the person who served her on April 6, 2022.

(5th Cir. 2008) (witness credibility determinations should be upheld when based on witness demeanor).

Michael's hearing testimony was inconsistent as to how Karen contacted him on April 6, 2022, and his testimony that Brooke received letters in the mail about the lawsuit prior to April 6 contradicted the statement in his affidavit that it was Karen who received letters in the mail. Brooke's testimony that she never received any mail about the lawsuit was inconsistent with the certified mail receipts indicating she received the request for waiver and complaint by mail in January 2022 and in February 2022. These inconsistencies suggest a lack of credibility. *See Almeda-Guzman v. Barr*, 788 F. App'x 261, 265–66 (5th Cir. 2019) (affirming adverse credibility finding based on inconsistent witness testimony); *Jiang Hui-Qing v. Holder*, 339 F. App'x 419, 421 (5th Cir. 2009) (testimony inconsistent with other evidence lacks credibility). More, though Marleigh and Karen testified there are cameras at the Burr Road address (which Marleigh said made her certain Karen came to Michael's house on April 6), Michael provided no evidence of any camera footage showing Karen at his house on April 6. The absence of corroborating camera footage suggests Marleigh's testimony and Karen's testimony in that respect lack credibility as well. *See Gonzalez v. River Ventures, LLC*, No. 15-2145, 2017 WL 1364842, at *16 (E.D. La. Apr. 14, 2017) (plaintiff's testimony less credible in absence of corroborating evidence). Further, Marleigh's demeanor on the stand also diminished her credibility given her hesitation before providing conflicting responses to questions about the camera footage. *See Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1038–39 (5th Cir. 2015) (affirming district court determination that witness lacked credibility when he hesitated and provided conflicting answers). In contrast, Perry's testimony did not contradict his affidavits and he exhibited a calm demeanor on the stand, lending credence to his testimony. *See Whitaker*, 2017 WL 2378360, at *2 (no lack

11

of credibility where witnesses' testimony was consistent and witnesses "displayed a calm demeanor").

Having observed the demeanor of the hearing witnesses and considered their testimony and all hearing evidence as a whole and in view of the affidavits and all other documentary evidence, the Court concludes that the evidence proffered by Sentry is more credible than the evidence proffered by Michael. Given this, Michael has failed to present strong and convincing evidence to refute Sentry's prima facie evidence of valid service. So Michael's request to set aside the entry of default and default judgment based on Rule 60(b)(4) will be denied.[10]

### B. Rule 60(b)(1)

Michael also argues the default judgment should be set aside based on Federal Rule of Civil Procedure 60(b)(1). Doc. #32 at 6. Sentry responds that Michael cannot establish any of the factors that would warrant relief from the default judgment under Rule 60(b)(1). Doc. #39 at 7–8, 9–11. Michael replies that the record contains sufficient evidence to set aside the judgment under Rule 60(b)(1) because nothing indicates his default was willful. Doc. #44 at 4–5.

Rule 60(b)(1) permits a court to set aside a final judgment based on "mistake, inadvertence, surprise, or excusable neglect."[11] *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 938

---

[10] Because the Court concludes Michael was personally served on April 6, 2022, it need not consider Sentry's alternative argument regarding actual notice. It seems though that valid service would be established even if Karen was served on April 6. Where a defendant has actual notice of a lawsuit against him, "[t]he Fifth Circuit has held that Rule 4's 'provision concerning usual place of abode should be liberally construed to effectuate service.'" *Howard v. Shelton*, 277 F.R.D. 168, 170 (S.D. Miss. 2011) (quoting *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967)). Michael admittedly had actual notice of the lawsuit by February 2022 when, according to him, Karen gave him the summons, complaint, and request for waiver mailed to the Athens Quincy Road address. Doc. #31-1 at PageID 164. And the Athens Quincy Road address would satisfy Rule 4's "dwelling or usual place of abode" requirement under a liberal interpretation because Michael's mother lives there and it is his former residence. Delivering the papers to Karen at the Athens Quincy Road address then would still constitute valid service. *See Howard*, 277 F.R.D. at 170 (service valid under Rule 4(e)(2)(B) when defendant had notice of lawsuit and marshal left summons with defendant's boyfriend at boyfriend's apartment).

[11] "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Michael filed his motion on June 19, 2023, Doc. 31, within a year of entry of the December 20, 2022, default judgment, Doc. #21.

(5th Cir. 1999). "Whether to grant or deny Rule 60(b) relief is within the sound discretion of the district court." *Webb v. Davis*, 940 F.3d 892, 898 (5th Cir. 2019). In determining whether to set aside a default judgment under Rule 60(b)(1), district courts consider (1) "whether the default was willful;" (2) "whether setting it aside would prejudice the adversary;" and (3) "whether a meritorious defense is presented."[12] *Jenkens & Gilchrist a Prof'l Corp. v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008). Courts may also consider other factors justifying relief, including "whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default." *Id.* "Rule 60(b) should be applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding." *Scott*, 556 F. App'x at 294 (cleaned up).

### 1. Willfulness

Michael argues the default judgment was not willful because he and Brooke twice consulted their custody attorney Nelson and Nelson advised Michael to do nothing until he was personally served. Doc. #32 at 7. Sentry responds that Michael had notice of the lawsuit against him, his attorney's statements are inadmissible hearsay, and Michael's affidavit statements that he was not personally served is a legal conclusion the Court should disregard. Doc. #39 at 11–12. Michael replies that actual notice cannot cure defective service and that Nelson's statements are not hearsay because they were offered not for their truth, but to show the effect on him and Brooke. Doc. #44 at 2–5.

"A *willful default* is an 'intentional failure' to respond to litigation." *In re OCA, Inc.*, 551 F.3d at 370 n.32 (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)) (emphasis in

---

[12] Although "courts apply essentially the same standard to motions to set aside a default and a judgment by default," a motion to set aside an entry of default "is more readily granted than a motion to set aside a default judgment." *In re OCA, Inc.*, 551 F.3d 359, 370 (5th Cir. 2008) (citations and emphasis omitted).

13

original). "The inquiry is properly constrained to examining the defendant's pre-default actions to determine whether the defendant intentionally failed to file an answer or other responsive pleading after being served with a complaint." *Scott*, 556 F. App'x at 295 n.5. "The defendant has the burden to convince the court that its neglect was excusable, rather than willful, by a preponderance of the evidence." *In re Chinese-Manufactured Drywall Prods.*, 742 F.3d 576, 594 (5th Cir. 2014).

The only evidence Michael offers for his failure to respond to the litigation are his and Brooke's affidavit statements that Nelson advised him to do nothing until he was personally served and his and Brooke's testimony about the same. While the Court's determination that Michael was served with process is not dispositive of willfulness,[13] other evidence indicates Michael's intentional failure to respond to the litigation. According to the affidavits of Michael, Karen, and Brooke, Michael had knowledge of the lawsuit by February 2022 when Karen gave him the summons, complaint, and request for waiver mailed to the Athens Quincy Road address. Further, after Michael was served on April 6, 2022, he made no attempt[14] to address the lawsuit until June 2023, over a year later. Doc. #31-1 at PageID 165; Doc. #28. Michael argues that failing to respond on the advice of his custody attorney is "the quintessential example of inadvertence or excusable neglect," Doc. #32 at 8, but he cites no authority for this assertion, *see id.* And significantly, Michael did not call Nelson as a hearing witness or submit an affidavit from her to back up his testimony about what he says she told him. *See, e.g.*, *Kiewel v. Balabanov*, No. 10-

---

[13] *See Jenkens & Gilchrist*, 542 F.3d at 123 ("[P]erfection of service is not determinative--the defendant's knowledge of the perfected service, and the defendant's actions post-service, also play a role in measuring the willfulness of … default."); *see Lacy*, 227 F.3d at 293 (no willful default though defendant mistakenly believed service had not been effected).

[14] A defendant need not file an answer to establish lack of willfulness—even attempting to contact the plaintiff directly to resolve the litigation will suffice. *See Lacy*, 227 F.3d at 292–93 (no willful default where counsel for defendant made repeated contacts with plaintiff to resolve the suit). There is no evidence Michael attempted to contact Sentry or its counsel.

2113, 2011 WL 1770084, at *3 (D. Kan. May 9, 2011) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)) (where defendants had actual notice and did not respond until two months after entry of default, defendants willfully defaulted despite argument they had no experience in civil litigation and simply relied on advice of counsel who never entered appearances on their behalf). For these reasons, the Court concludes Michael's default was willful. *See Boissier v. Katsur*, 676 F. App'x 260, 263 (5th Cir. 2017) ("definition of willful default" when defendant was aware of allegations against her and contacted attorney three months before entry of default but chose not to answer complaint or communicate with court in any way during three-month period she had notice of suit). "A finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding." *See UnitedHealthcare Ins. Co. v. Holley*, 724 F. App'x 285, 288 (5th Cir. 2018) (quoting *Lacy*, 227 F.3d at 292) (district court not required to consider other 60(b)(1) factors after finding default willful when defendant had notice of suit but took "no … action to respond or stay abreast of the status of litigation against her"). The Court nevertheless will address the other factors below.

### 2. Prejudice

To establish prejudice, "the plaintiff must show that setting aside the default judgment will result in 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Scott*, 556 F. App'x at 298 (quoting *Lacy*, 227 F.3d at 293). "There is no prejudice to the plaintiff where 'the setting aside of the default has done no harm to [the] plaintiff except to require it to prove its case.'" *Lacy*, 227 F.3d at 293 (citation omitted).

Michael argues in his memorandum brief that setting aside the default judgment would not prejudice Sentry because Sentry "would simply be in the same position it was in, and could proceed to an adjudication on the merits." Doc. #32 at 7. And at the hearing he argued that Sentry, a large

15

insurance company, would not be prejudiced by having to prove its claims against him. Sentry counters that it will be prejudiced because "[i]n addition to the expense of rehearing this matter, [setting aside the default judgment] will require [it] to incur additional attorney fees, costs, and litigation expenses" including the cost of expert witnesses and "this matter is not as fresh as it was when the case was originally filed." Doc. #39 at 7. Michael did not reply to this argument.

Though this case now may not be as fresh, Sentry's arguments do not show that setting aside the default judgment would result in the loss of evidence, increased discovery difficulties, or increased opportunities for fraud and collusion. And the additional expenses Sentry points to are simply the costs required for Sentry to prove its case. *See Scott*, 556 F. App'x at 298 (to show prejudice "[i]t is not enough that the plaintiff will be required to prove his case"). Accordingly, setting aside the default judgment would not prejudice Sentry.

### 3. Meritorious defense

Michael argues he has several defenses on the merits because his sworn affidavit states that (1) he installed the roof "properly" and "in a good and workmanlike manner;" (2) the roof "dropped slightly, about six (6) inches," under the weight of collected ice nearly six years after installation; (3) "no metal roof is designed or installed to withstand" the weight of collected ice brought on by the severe ice storm of February 2021; and (4) any claims against him are barred by the statute of limitations. Doc. #32 at 7–8, 5. Michael also argues that he was not required by law to warranty the roof from "such extraordinary circumstances." *Id.* at 8. At the hearing, Michael testified that he did not "fail to do anything a reasonable installer would have done." Sentry contends that Michael's affidavit is self-serving and consists of "bare bones, conclusory allegations" incapable of raising the existence of a meritorious defense. Doc. #39 at 7. Michael did not reply to this argument.

To establish the existence of a meritorious defense, the defendant must "provide definite factual allegations, as opposed to mere legal conclusions," *Scott*, 556 F. App'x at 296 (citation and quotation marks omitted), "with supporting record evidence." *Jenkens & Gilchrist*, 542 F.3d at 122. Whether a meritorious defense exists "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Jenkens & Gilchrist*, 542 F.3d at 122 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)).

Because Sentry's amended complaint alleges Michael's "negligence and/or deficient design and/or improper or deficient construction" caused the roof to collapse at Amory Marine,[15] Sentry must show the existence of a duty, breach of duty, causation, and injury. *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). A plaintiff's failure to establish a required element is a complete defense to a negligence claim. *Joe McGee Constr. Co. v. Brown-Bowens*, 368 So. 3d 1277, 1280 (Miss. 2023).

Michael's bare assertion that he properly installed the roof lacks the specificity required to show the existence of a meritorious defense against Sentry's claims. A defendant asserting proper construction establishes a meritorious defense to negligence when such assertion is supported by additional facts. *See Little v. Synergies3 Tec Servs., LLC*, No. 1:21-cv-8, 2021 WL 1792088, at *2 (N.D. Miss. May 5, 2021) (meritorious defense in negligence case found where defendant claimed proper installation because plaintiff approved installation and did not raise any concerns). Similarly, Michael's unsubstantiated argument that no metal roof can withstand the weight of ice that collected on the roof during the storm does not raise a meritorious defense because it is not

---

[15] Doc. #4 at 3. Sentry alternatively claims that the roof was "so deficient in design and construction such that it was unable to withstand various wind and load requirements required by ordinances and codes of the local municipality and this deficiency was intentionally concealed by [Michael] … which resulted in the failure of the roof during inclimate weather." Doc. #4 at 4.

17

supported by specific facts. *See id.*; *Sellers v. Osyka Permian, LLC*, 263 F.R.D. 372, 378 (S.D. Miss. 2009) ("a defendant must make a clear and specific showing by a definite recitation of facts that the defendant has a valid defense") (cleaned up).

Additionally, Michael's claims that no law required him to warranty the roof and that any claims against him are barred by the statute of limitations are legal conclusions that require a factual basis to demonstrate a meritorious defense. *See Sellers*, 263 F.R.D. at 377–78 (meritorious defense to negligence claim established when defendant argued it had no legal duty to plaintiff based on specific legal authority and factual allegations); *Tex. Tamale Co., Inc. v. CPUSA2, LLC*, No. 4:21-cv-3341, 2022 WL 20717359, at *3 (S.D. Tex. June 21, 2022) (statute of limitations defense found when defendant's argument included factual allegations about time plaintiff discovered defendant's alleged conduct and time it filed suit). Because Michael failed to specify the factual basis for such claims and did not present any witness testimony or other evidence to support these defenses, he has not established the existence of a meritorious defense based on warranty requirements or statute of limitations.

Finally, Michael's affidavit statement that the roof dropped slightly by six inches—instead of collapsing as Sentry alleged—could refute an essential element of Sentry's negligence claim if proven at trial. *See Rivera v. Adams Homes, LLC*, No. 1:12-cv-404, 2014 WL 3342566, at *7 (S.D. Miss. July 8, 2014) (under Mississippi law, causation and damages refuted where no evidence window defendant installed fell and proximately caused plaintiff's damages). But at the evidentiary hearing, Michael testified that he never personally observed the alleged damage to the roof because he did not attend the inspection with Sentry's engineer.[16] And Michael has not

---

[16] Michael testified that he sent his brother and colleague Jessie Barnett to the inspection with Sentry's engineer and that the statement in his affidavit is based on what his brother and Barnett told him they observed. Michael's testimony about what his brother and Barnett said and observed is hearsay. Further, Michael did not call either as a hearing witness or submit any affidavits by them.

submitted any other evidence to support his claim that the roof only dropped six inches. Therefore, a defense based on the roof not collapsing is not supported by record evidence. *See Jenkens & Gilchrist*, 542 F.3d at 121 n.5 (declining to consider an affidavit not based on personal knowledge as evidence on a motion to set aside default judgment).

In sum, though Michael identified several possible defenses, he has not established with definite factual allegations and supporting evidence that a meritorious defense exists. *See Scott*, 556 F. App'x at 296 (defendant "failed to demonstrate a meritorious defense … because she made only conclusory statements about available meritorious defenses") (internal quotation marks omitted).

### 4. Other factors

The other factors which may be considered—public interest, financial loss, and expeditiousness in correcting default—either are neutral or weigh against Michael. The public interest factor "may cut both ways because there is a value both in allowing trial of cases on the merits and in adhering to procedural rules." *In re OCA, Inc.*, 551 F.3d at 374. However, Michael did not act expeditiously to correct the default because he did not respond until six months after the final judgment was entered, despite having notice of the suit. Docs. #21, #28; *see Block Corp. v. Nunez*, No. 1:08-cv-53, 2009 WL 198366, at *4 (N.D. Miss. Jan. 26, 2009) (defendant did not act expeditiously to correct default when he was aware of case and waited until five months after entry of default judgment to contest it). And while Michael argued at the hearing that enforcing the $188,700.65 judgment would "ruin him financially to bankruptcy," he has not offered or submitted any evidence in support of the argument.

5. **Summary**

The default judgment was the result of Michael's willful inaction. And though setting aside the entry of default and default judgment would not prejudice Sentry, Michael has not established the existence of a meritorious defense to Sentry's claims or that the amount of the judgment would ruin him financially. Consequently, the motion to set aside will be denied.

**III**
**Conclusion**

Michael's motion to set aside the entry of default and default judgment [31] is **DENIED**.

**SO ORDERED**, this 25th day of March, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**